UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL L. DAVIS,

    Plaintiff,

       v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES

and

UNITED STATES DEPARTMENT OF
JUSTICE,

    Defendants.

Civil Action No. 12-1246 (JDB)

## MEMORANDUM OPINION

This matter involves two qui tam actions brought by plaintiff Michael Davis against the District of Columbia. In the first action, United States ex rel. Davis v. District of Columbia, No. 06-489 (D.D.C. filed Mar. 15, 2006) ("the 489 action"), Davis brought suit as a relator on behalf of the United States under the False Claims Act, alleging that the District violated the Act by making a false claim for Medicaid reimbursement, making or using false records or statements to get a false claim for Medicaid reimbursement approved, and conspiring to defraud the federal government through a false or fraudulent claim. In the second action, United States ex rel. Davis v. District of Columbia, No. 06-629 (D.D.C. filed Apr. 4, 2006) ("the 629 action"), Davis, again on behalf of the United States, alleged that the District violated the Act by submitting a Medicaid reimbursement claim without maintaining adequate supporting documentation. In both actions, the United States declined to intervene. Davis, proceeding pro se, now brings suit against the

federal government and its attorneys based on their conduct in connection with his qui tam actions. The government has moved to dismiss Davis's complaint on various grounds. For the reasons set forth below, the Court concludes that Davis fails to state a claim upon which relief can be granted, and hence will grant the government's motion.

**BACKGROUND**

Davis's allegations here are based on his discontent with the government's handling of the qui tam actions, one of which remains pending. The False Claims Act prohibits false or fraudulent claims for payment from the United States, and authorizes private individuals, known as "relators," to bring suit in the government's name to remedy such fraud. See 31 U.S.C. §§ 3729(a), 3730(b)(1); United States ex rel. Davis v. District of Columbia ("Davis III"), 679 F.3d 832, 835 (D.C. Cir. 2012). The circumstances under which relators may bring suit are limited, however. The version of the Act applicable to Davis's qui tam claims bars actions that are "based upon the public disclosure of allegations or transactions . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A) (2006).[1] An original source is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under [the Act] which is based on the information." Id. § 3730(e)(4)(B).

Davis's first qui tam action, the 489 action, was dismissed for lack of subject matter jurisdiction because the allegations in his complaint had previously been publicly disclosed and Davis had not shown that he qualified as an original source. See United States ex rel. Davis v.

---

[1] Section 3730(e)(4) of the False Claims Act was amended in 2010. See Pub. L. No. 111-148, 124 Stat. 119 § 10104(j)(2) (Mar. 23, 2010). But because these amendments do not apply retroactively, the prior version of the Act governed Davis's 2006 claims. See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 283 n.1 (2010).

2

District of Columbia ("Davis I"), No. 09-5427, 2011 WL 611814, at *1-2 (D.C. Cir. Feb. 15, 2011). Specifically, Davis did not timely show that he had provided the relevant information to the federal government before filing his qui tam complaint, as is required by § 3730(e)(4)(B), "despite multiple opportunities to do so." See id. at *2. The dismissal was affirmed on appeal. See id. at *1. The 629 action was also dismissed for lack of subject matter jurisdiction, because there was no evidence that Davis had provided the information supporting his fraud allegations to the government before the public disclosure of that information. See United States ex rel. Davis v. District of Columbia ("Davis II"), 773 F. Supp. 2d 21, 32-34 (D.D.C. 2011) (relying on United States ex rel. Findley v. FPC-Boron Emps.' Club, 105 F.3d 675 (D.C. Cir. 1997)). But the D.C. Circuit reversed that dismissal, concluding that Davis was not required to provide his information to the government before any public disclosure and that he had satisfied the requirements for being an original source under § 3730(e)(4)(B). See Davis III, 679 F.3d at 838-39 (finding that Findley's reading of the False Claims Act had been rejected by the Supreme Court in Rockwell International Corp. v. United States, 549 U.S. 457 (2007)). The case was remanded, and the parties have now filed cross-motions for summary judgment on the merits. See Docket Entries 101, 102, Davis, No. 06-629.

In this case, Davis is suing the Department of Health and Human Services ("HHS") and the Department of Justice ("DOJ"), as well as attorneys of those agencies and others, under the Administrative Procedure Act ("APA"). See Am. Compl. No. 3 [ECF 23] ("Second Am. Compl.") 2;[2] Am. Compl. [ECF 19] 1, 15. As Davis makes clear, this case is not about the fraud

---

[2] Although Davis labels this document "Amended Complaint No. 3," it is in fact his second amended complaint. The first document Davis sought to file as an amended complaint was filed as an addendum to his original complaint, and his first (and only other) amended complaint was filed on January 4, 2013. See 10/19/12 Minute Order; 1/4/13 Order [ECF 18]. Page references are to the page numbers listed at the bottom of Davis's second amended complaint.

3

alleged in his qui tam complaints. See, e.g., Am. Compl. 14, 19; Pl.'s Opp'n to Defs.' MTD [ECF 25] ("Pl.'s Opp'n") 8. Rather, this case is about the actions taken – and, more pointedly, not taken – by attorneys for the United States after they were apprised of his allegations.

Essentially, Davis asserts the following.[3] Before filing the qui tam suits, Davis informed HHS and DOJ of the fraud alleged in his complaints, met with attorneys representing those agencies and others, and was interviewed at length by FBI agents. See Am. Compl. 14, 16, 18. Consequently, attorneys for the United States knew that the District of Columbia had in fact committed civil and criminal offenses against the federal government and "was knowingly engaged in a 'fraud on the Court,'" and yet the attorneys did not intervene in the qui tam cases, provide the Court with "vital and 'material'" information in their possession, or otherwise take steps to prevent the District from defending against Davis's claims. See id. at 16-19, 24. And by remaining on the sidelines of the qui tam litigation, the federal government attorneys themselves engaged in unlawful conduct, including, among other things, failure to enforce the fraud provisions of the Social Security Act, "fraud on the court," and violation of professional conduct rules. See id. at 2, 19.

## STANDARD OF REVIEW

"[I]n passing on a motion to dismiss . . . for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Leatherman v. Tarrant Cnty. Narcotics Intelligence &

---

[3] Davis has filed a complaint, an addendum to his complaint, and two amended complaints in this matter. He asks that the Court consider the allegations in his several pleadings taken together. Because Davis is proceeding pro se, the Court will address Davis's claims as presented in all of his pleadings. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (pro se pleadings are to be "'liberally construed'"); Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999) (pro se filings should be read together); Sieverding v. U.S. Dep't of Justice, 693 F. Supp. 2d 93, 101 n.2 (D.D.C. 2011).

4

Coordination Unit, 507 U.S. 163, 164 (1993). Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that may be drawn from the allegations of fact. See Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson, 551 U.S. at 93. Although "detailed factual allegations" are not necessary, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).

The pleadings of pro se litigants are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (citation and internal quotation marks omitted). "[A]lthough a court will read a pro se plaintiff's complaint liberally," such a complaint

5

nevertheless "must present a claim on which the Court can grant relief." Chandler v. Roche, 215 F. Supp. 2d 166, 168 (D.D.C. 2002) (citing Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

## DISCUSSION

The government moves to dismiss Davis's claims under Federal Rule of Civil Procedure 12(b)(6). It argues, among other things, that Davis is seeking relief based on decisions that are committed to agency discretion, and that Davis's allegations of fraud on the court and other violations of law do not state a claim upon which relief can be granted.[4]

### I. Failure to Enforce

The government argues that Davis may not assert claims challenging the decisions of HHS and DOJ, and the actions of attorneys who carried out those decisions, regarding whether and how to proceed in Davis's qui tam actions, because such matters are committed to agency discretion. See Defs.' MTD 10-11. The Court agrees.

Davis brings suit under the APA, 5 U.S.C. §§ 701-06, which provides a cause of action for persons adversely affected by agency actions or an agency's failure to act. See Sierra Club v. Jackson, 648 F.3d 848, 855 (D.C. Cir. 2011) (citing 5 U.S.C. § 551(13) (defining "agency action" as including failure to act); Heckler v. Chaney, 470 U.S. 821, 828 (1985)). But the APA explicitly excludes from judicial review agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); Sierra Club, 648 F.3d at 855. Under Heckler v. Chaney, "an

---

[4] Because the Court concludes that Davis has not stated a claim under Rule 12(b)(6), it need not address the government's qualified immunity argument. See Defs.' Mem. in Supp. of Mot. to Dismiss [ECF 24-1] ("Defs.' MTD") 11-12. In addition, the Court does not specifically address the government's argument that Davis's fraud claims do not meet Federal Rule of Civil Procedure 9(b)'s requirement that such claims be pled with particularity, see id. at 8-9, as Davis disclaims any argument that "attorneys participat[ed] in an underlying fraud against HHS," see Pl.'s Opp'n 5.

6

agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." 470 U.S. at 831; accord Ass'n of Irritated Residents v. EPA, 494 F.3d 1027, 1031 (D.C. Cir. 2007).

This discretion extends to the government's decisions about whether to proceed in qui tam actions brought under the False Claims Act. In Swift v. United States, 318 F.3d 250 (D.C. Cir. 2003), the D.C. Circuit concluded that the government has "what amounts to 'an unfettered right to dismiss' a qui tam action." See Hoyte v. Am. Nat'l Red Cross, 518 F.3d 61, 65 (D.C. Cir. 2008) (quoting Swift, 318 F.3d at 252). Rejecting the argument that § 3730(c)(2)(A) of the Act gives courts "general oversight" of prosecutorial decisions regarding qui tam actions, the Swift court explained: "Nothing in § 3730(c)(2)(A) purports to deprive the Executive Branch of its historical prerogative to decide which cases should go forward in the name of the United States. The provision neither sets 'substantive priorities' nor circumscribes the government's 'power to discriminate among issues or cases it will pursue.'" 318 F.3d at 252-53.

Davis's allegations are numerous, but most of them can be boiled down to this: Because Davis provided the federal government and its attorneys with, in Davis's view, indisputable evidence that the District had committed fraud against the federal government, the federal agencies and their attorneys could not lawfully fail to act in the qui tam actions filed by Davis – by intervening pursuant to the False Claims Act or taking other appropriate action. See, e.g., Am. Compl. 18 (Davis reporting that in previous letters to the Secretary of HHS and the Attorney General, he had requested "that the United States take appropriate steps to vacate, set aside or otherwise intervene in [his qui tam actions]").

But the government had discretion over whether to intervene in Davis's qui tam actions, and it chose, in accordance with the False Claims Act, to "decline[] to take over the action[s]."

7

See 31 U.S.C. § 3730(b)(4)(B); see also id. § 3730(b)(2) (stating that the government "may" elect to intervene and proceed with an action). The government's decisions not to intervene are presumptively unreviewable, see Swift, 318 F.3d at 252-53, and hence, absent some exception, to the extent Davis is challenging those decisions he fails to state a claim under the APA, see Sierra Club, 648 F.3d at 854.

Davis acknowledges that "[f]ederal prosecutors have discretion with respect to crimes they choose to prosecute," but his argument seems to be that the attorneys involved here did not have discretion not to act because "[t]here [was] overwhelming evidence that the District of Columbia committed activities which constituted Medicare/Medicaid fraud." See Second Am. Compl. 3.[5] In other words, Davis appears to argue that the government and its attorneys could not decline to intervene because the allegations of fraud in his complaints were true. In addition to the information he gave to federal government attorneys and the meetings he had with them, Davis places particular emphasis on a letter from the District of Columbia Office of the Attorney General to the Clerk of the D.C. Circuit, stating that the District did not challenge the following allegation in Davis's complaint:

> 42. The District Government has acknowledged in a court of law that it received the Black Book Medicaid [Federal Financial Participation] related to the Black Book claims. The District Government further acknowledged that the money it received was not paid to D.C. General, and that Davis & Associates had never been paid for its work on the Black Book.

---

[5] Davis also asserts that the government does not have discretion to (a) deny that a crime has been committed, (b) cover up crimes committed against the United States, or (c) aid or abet civil and criminal violations of federal law and regulations. Second Am. Compl. 3. Thus, he implies that the government has unlawfully taken such actions. But Davis does not allege that any defendant has outrightly denied that the District committed fraud; and, as noted in Part III below, aside from his complaints that the government did not intervene or take other active steps in his qui tam actions, Davis does not allege any independent facts to show that the government covered up, aided, or abetted civil or criminal violations. Hence, he fails to state a claim on these bases.

8

See Pl.'s Mot. for Prelim. Inj., Ex. 14 [ECF 3-14] 1-2 (citation omitted). This letter, Davis asserts, is proof that the District committed, and the government knew about, the fraud he alleged. See, e.g., Pl.'s Opp'n 10.

But the truth or falsity of a relator's allegations do not curtail the discretion of the government to decide how to enforce the False Claims Act. The Act not only makes intervention optional when a qui tam action is brought, see 31 U.S.C. § 3730(b)(2), (b)(4)(B), but it also gives the Attorney General discretion over whether to bring a civil action against a person "[i]f [he] finds that [the] person has violated or is violating" the Act's provisions, see id. § 3730(a) (providing that upon such a finding, "the Attorney General may bring a civil action under this section against the person" (emphasis added)). See also, e.g., Heckler, 470 U.S. at 831 (stating that "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise," only one of which is "whether a violation has occurred"). Even assuming that Davis's underlying allegations are true, the government was nonetheless permitted to decide not to intervene in – and could have gone further and dismissed – his qui tam actions. See, e.g., Swift, 318 F.3d at 254 (affirming grant of government's motion to dismiss qui tam action, even though "the government [had] conceded the truth of [the relator's] allegations when it sought to dismiss").[6]

Davis also stresses that § 3730(a) of the False Claims Act states that the Attorney General "'diligently shall investigate a violation under section 3729.'" See Pl.'s Opp'n 11 (quoting 31 U.S.C. § 3730(a)); see also id. at 12 (citing 42 C.F.R. Part 455 (requiring investigation of Medicaid fraud)). However, it is apparent from the face of Davis's pleadings that the federal

---

[6] Such a decision would seem especially reasonable in a case, such as the 629 action, in which "the government suffered no damages." See Davis III, 679 F.3d at 839-40; see also Swift, 318 F.3d at 251, 254 (noting legitimacy of governmental interest in not expending resources on litigation where dollar recovery would not be large enough to justify expenditure).

government did investigate the violations he alleged. In fact, Davis's principal claims here are based on his allegations that HHS, DOJ, and government attorneys investigated, and for this reason had knowledge of, the alleged fraud committed by the District. His claims are premised not on a failure to investigate, but on a failure to take actions Davis alleges were required as a result of what the government's investigation revealed. But as already stated, an affirmative finding that a False Claims Act violation had occurred or was occurring did not require the government to bring a civil action itself or to intervene in the actions brought by Davis. See 31 U.S.C. § 3730(a), (b)(2), (b)(4)(B). Hence, Davis has not stated a claim based solely on the government's failure to interject itself into his qui tam actions.

## II. Fraud on the Court

Davis also alleges that the government and its attorneys committed "fraud on the court" by withholding material information in the qui tam actions, and he argues that motions by the District in those actions should be stricken and that the judgment of dismissal in the 489 action should be set aside. See Am. Compl. 38, 41; Pl.'s Opp'n 27-28.

In Swift, the D.C. Circuit left open the possibility that "fraud on the court" might warrant a departure from the presumptive deference owed to the government's decision whether to proceed in an action under the False Claims Act. See 318 F.3d at 253; accord Hoyte, 518 F.3d at 65; see also Fed. R. Civ. P. 60(d)(3) (stating that rule does not limit court's power to "set aside a judgment for fraud on the court"). However, the standard for showing fraud on the court is a difficult one to meet.

> Fraud on the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. Fraud upon the court refers only to very unusual cases involving far more than an injury to a single litigant. Examples include the bribery of a judge or the knowing participation of an attorney in the presentation of perjured testimony.

Baltia Air Lines, Inc. v. Transaction Mgmt., Inc., 98 F.3d 640, 642-43 (D.C. Cir. 1996) (citations, alteration, and internal quotation marks omitted).

Davis's principal allegation here is that federal government attorneys had in their possession information and materials substantiating Davis's fraud claims and yet they did not disclose such information and materials to the court. He does not specifically allege any improper influence directed at "the judicial machinery itself," other than what he contends was an incomplete presentation of the evidence. See Baltia Air Lines, 98 F.3d at 642 (internal quotations marks omitted). But fraudulent documents, false statements, and perjury, all of which are categorically similar to the nondisclosure of relevant information because they affect a court's view of the evidence, do not generally constitute fraud on the court. See id. Hence, the mere fact that the government did not tell the court everything it knew about Davis's claims in the qui tam actions does not mean that there was fraud on the court.

Moreover, because the United States declined to intervene in Davis's qui tam actions, it was not a party to those actions. The disclosure obligations of attorneys for the United States were not the same as those of the attorneys representing the parties to those actions. Davis invokes the District of Columbia Rules of Professional Conduct, citing, for example, the rule requiring candor to the tribunal, and repeatedly states that attorneys for the government were "officers of the court." See, e.g., Am. Compl. 17. But Davis cites no law requiring attorneys for the United States to step in and provide information to supplement and/or correct the record in a case in which the United States is not a party, and the Court finds it highly unlikely that nondisclosure by an attorney for a non-party could ever rise to the level of fraud on the court. See, e.g., 11 Charles Alan Wright et al., Federal Practice and Procedure § 2870 (3d ed.) ("Nondisclosure by a party or the party's attorney has not been enough." (emphasis added)).

11

It is also not clear to the Court just what information Davis believes the United States should have disclosed in the qui tam actions. Davis asserts, for example, that "[a]ttorneys for the United States have known since the filing of the first defense Motions by the District that Federal Government Departments and Agencies had possession of absolute proof and evidence that crimes alleged in complaints filed by Davis in both [False Claims Act] cases were in fact true, and yet, the United States withheld this vital and 'material' information from the Courts." Am. Compl. 17. Davis further asserts that the District "never had standing to present a defense or appeal a decision when the basis of the appeal itself involved criminal acts committed by the District . . . in furtherance of a conspiracy to defraud the Government"; and that "the United States not only allowed the District to engage in an ongoing conspiracy" but also furthered that conspiracy through misconduct on the part of its attorneys and by letting the District "file an Appeal to the [D.C. Circuit]." See id.

Davis thus appears to be arguing that the District could not lawfully defend itself against his False Claims Act allegations because it was guilty on the merits, and that federal government attorneys were complicit in both the underlying fraud and fraud on the court because they let the District file motions to dismiss without giving the court evidence that would tend to prove the District's guilt. But both qui tam actions were originally dismissed not on the merits, but for lack of subject matter jurisdiction. Even if the District in fact committed the acts alleged in Davis's complaint, it was not barred from raising a lack of subject matter jurisdiction, and because that was the basis for both dismissals, any "proof and evidence that [the] crimes alleged . . . were in fact true" would not have been relevant in any case. See Am. Compl. 17. Moreover, Davis has not alleged facts sufficient to conclude that the court in either qui tam case was misled, let alone in a way that would justify setting aside a judgment for fraud on the court.

See Fed. R. Civ. P. 60(d)(3). Davis is getting a full opportunity to argue his claims on the merits in the 629 action, and although he suggests that conduct by the government could have changed the outcome in the 489 action, see, e.g., Am. Compl. 38; Pl.'s Opp'n 3, 6-7, the 489 action was dismissed because, "despite multiple opportunities to do so," Davis did not provide evidence showing that he had satisfied § 3730(e)(4)(B)'s disclosure requirement, see Davis I, 2011 WL 611814, at *2. Given that the government had not intervened, Davis was responsible for conducting the qui tam litigation, and the government cannot be held liable for not providing evidence to the court that Davis had ample opportunities to provide himself. See id. at *3 (describing how, on motion to reconsider, Davis belatedly offered letters he sent to federal officials before filing of complaint).

For all of these reasons, the Court concludes that Davis has failed to plead facts stating a plausible claim of fraud on the court.

### III. **Other Alleged Violations**

Davis's main claims in this case relate to the federal government's inaction in Davis's qui tam suits and "fraud on the court." The Court has concluded that Davis has not stated a claim for relief on either basis. Davis also alleges various other violations of federal law and regulations and the Rules of Professional Conduct. See Am. Compl. 2. For example, he cites several specific professional conduct rules, see id., some of which he argues were violated because government attorneys did not provide evidence in his qui tam cases, see id. at 17 – an argument the Court has rejected – and others which he argues were violated because government attorneys met with his attorneys while his attorneys were allegedly representing an adverse party at the same time, see id. at 35-37; Pl.'s Opp'n 2. But in making these arguments, Davis seems to assert a conflict of interest on the part of his attorneys; he does not state a claim for relief against

13

attorneys for the United States. And the Court sees no other facts in Davis's complaints from which it can reasonably be inferred that government attorney misconduct entitles him to relief.[7]

Davis also alleges that the United States and attorneys representing it "knowingly and willfully engaged in conduct and participated in activities in violation of federal Healthcare laws and regulations (specifically, Medicare, Medicaid, Social Security Act, Dodd/Frank, Sarbanes/Oxley and others)." Second Am. Compl. 3. But this and similar general allegations – for example, that federal government attorneys "engaged in overt acts to aid and abet and participated in civil and criminal violations of law," Pl.'s Opp'n 5 – are insufficient because they offer little more than legal conclusions unsupported by facts. See Iqbal, 556 U.S. at 679 (court may "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"). The primary basis for these allegations appears to be the government's actions in response to Davis's claims that the District violated the False Claims Act. But as discussed, the government's exercise of its prosecutorial discretion is not generally reviewable, and Davis has not sufficiently alleged an exception for fraud on the court. Davis's allegations that government attorneys "participated" in unlawful acts lack any supporting factual matter independent of Davis's qui tam suits.

In sum, then, Davis has not stated a claim upon which relief can be granted, and hence this action will be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss will be granted. A separate order accompanies this memorandum opinion.[8]

---

[7] Davis appears to allege some sort of impropriety connected to the government's settlement of a related Medicaid fraud and abuse case. See Am. Compl. 36-37. But the Court finds nothing in this particular allegation or the rest of Davis's voluminous filings from which it may infer "more than the mere possibility of misconduct." See Iqbal, 556 U.S. at 679.

14

                                                /s/
                                           JOHN D. BATES
                                   United States District Judge

Dated: September 16, 2013

---

[8] Davis has recently filed a motion to unseal a document filed with his amended complaint. See Pl.'s Refiled Mot. to Unseal [ECF 34]. But the only apparent basis for the motion is Davis's concern that the Court may not be able to access the sealed document. See Pl.'s Mot. to Unseal [ECF 33]. Because the Court can access the document, and in the absence of further comment from Davis or the government, the document will remain under seal.